**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-3467
_____

DR. ALFONSO RODRIGUEZ, M.D.,

Appellant

v.

SECRETARY OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL
PROTECTION OF PENNSYLVANIA;
CHAIRMAN OF THE PUBLIC UTILITY COMMISSION;
ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No.:  3-12-cv-01458)
District Judge:  Honorable A. Richard Caputo

_____

Submitted under Third Circuit LAR 34.1(a)
On March 16, 2015

Before:  RENDELL, FUENTES, and BARRY, <u>Circuit Judges</u>

(Opinion filed: March 16, 2015)

## O P I N I O N*

**RENDELL**, <u>Circuit Judge</u>:

Appellant Dr. Alfonso Rodriguez sued the Pennsylvania Attorney General and the Secretary of the Pennsylvania Department of Environmental Protection challenging the constitutionality of Pennsylvania Act 13 of 2012. The District Court dismissed his case for lack of standing, and we will affirm.

Rodriguez challenges § 3222.1 of Act 13, which provides two mechanisms for health professionals to learn proprietary information about the chemicals used in fracking. In medical emergencies, a health professional can obtain this information if he verbally agrees that he will keep the information confidential and only use the information for the specific medical emergency.[1] In addition to the medical emergency

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] This medical-emergency provision states:

> If a health professional determines that a medical emergency exists and the specific identity and amount of any chemicals claimed to be a trade secret or confidential proprietary information are necessary for emergency treatment, the vendor, service provider or operator shall immediately disclose the information to the health professional upon a verbal acknowledgment by the health professional that the information may not be used for purposes other than the health needs asserted and that the health professional shall maintain the information as confidential. The vendor, service provider or operator may request, and the health professional shall provide upon request, a written statement of need and a confidentiality agreement from the health professional as soon as circumstances permit . . . .

58 Pa. Cons. Stat. Ann. § 3222.1(b)(11).

provision, there is a non-emergency provision that requires fracking companies to provide proprietary information to any health official who executes a confidentiality agreement and provides a written statement of need showing that he needs the information for diagnostic or treatment purposes.[2]

Rodriguez is a nephrologist in Dallas, Pennsylvania, in which hydraulic fracturing occurs and wastewater ponds of fracking fluids are located. He asserts that direct or indirect contact with fracking fluid can cause negative medical conditions and that proper treatment requires knowing the environmental toxins to which his patients may have been exposed. He describes himself as "a willing speaker to alert the public, in the broadest possible manner, of known dangers posed by high-volume hydraulic fracturing" and he "intends to publicize any threat to public health and safety derived from any information obtained from the gas drilling industry under Act 13." (App. 54.) He claims that "[e]xpert testimony at trial will also establish that the Medical Gag Rules interfere, on a daily and ongoing basis, with plaintiff's ability to properly diagnose and treat his

---

[2] The non-emergency provision states:

> A vendor, service company or operator shall identify the specific identity and amount of any chemicals claimed to be a trade secret or confidential proprietary information to any health professional who requests the information in writing if the health professional executes a confidentiality agreement and provides a written statement of need for the information indicating all of the following: (i) The information is needed for the purpose of diagnosis or treatment of an individual. (ii) The individual being diagnosed or treated may have been exposed to a hazardous chemical. (iii) Knowledge of information will assist in the diagnosis or treatment of an individual.

58 Pa. Cons. Stat. Ann. § 3222.1(b)(10).

3

patients." (App. 51.)[3] He asserts that he "will testify that the Medical Gag Rules interfere with the free and open exchange of information expressly required of plaintiff by the ethical obligations imposed by the medical profession" and that "[e]xpert testimony at trial will establish that in both emergency and non-emergency situations plaintiff is ethically prohibited from signing any confidentiality agreements imposed by the Medical Gag Rules." (App. 51.) He asserts that "[e]xpert testimony at trial will also establish that the inability of plaintiff to secure information as to the purity of local water supplies threatens plaintiff's ability to properly diagnose and treat his patients and imposes upon plaintiff a present and ongoing threat of civil liability for any improper diagnosis and treatment as a direct and proximate result of the Medical Gag Rules." (App. 51-52.)

The District Court issued two opinions, first dismissing Rodriguez's complaint and then dismissing his amended complaint. The District Court held that Rodriguez's alleged injury was too conjectural to satisfy the injury-in-fact requirement of Article III standing. It noted that, although Rodriguez alleged that he required the information described in Act 13 to treat his patients, he did not allege that he had been in any situations where he needed or attempted to obtain such information. He also did not claim that his communications had been constrained due to Act 13 or that he had been forced to sign a confidentiality agreement under Act 13.

---

[3] He refers to Act 13 as the "Medical Gag Rules."

On appeal, Rodriguez argues that the District Court erred because he does have standing.

We agree with the District Court that Rodriguez has failed to allege an injury-in-fact. "[T]he irreducible constitutional minimum of standing" requires that the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is insufficient to allege, as Rodriguez has done, that expert testimony will substantiate his claims at trial. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

Rodriguez relies on *Robinson Twp., Washington Cnty. v. Com.*, 83 A.3d 901 (Pa. 2013), to argue that doctors have standing to challenge Act 13. While the *Robinson* court did hold that a doctor had standing to challenge Act 13, it is distinguishable because it applied state law standing principles. In fact, the *Robinson* court noted that "[i]n contrast to the federal approach, notions of case or controversy and justiciability in Pennsylvania have no constitutional predicate, do not involve a court's jurisdiction, and are regarded instead as prudential concerns implicating courts' self-imposed limitations." *Id.* at 917. Rodriguez's reliance on Pennsylvania law as authority regarding federal standing requirements is misplaced.

Accordingly, we will affirm.

5